FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 04, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SAMMANTHA ROSE
SANKWICH,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

No.  1:17-CV-03047-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14, 18. Plaintiff Sammantha Rose Sankwich brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her applications for child disability benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Ms. Sankwich's Motion for Summary Judgment.

## I.      Jurisdiction

Ms. Sankwich filed her applications for supplemental security income and child's insurance benefits based on disability on April 5, 2013. AR 196-228.  Her alleged onset date is March 1, 2010. AR 220. Her application was initially denied on July 10, 2013, AR 137-43, and on reconsideration on November 8, 2013, AR 148-51.  The Appeals Council denied Ms. Sankwich's request for review on January 9, 2017, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Sankwich timely filed the present action challenging the denial of benefits on March 30, 2017. ECF No. 5. Accordingly, Ms. Sankwich's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.      Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B). Specific regulations provide for payment of disabled children's insurance benefits when the claimant is under age 18 and has a disability that began before turning 22. 20 CFR 404.350(a)(5).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Sankwich was 16 years old on her alleged disability onset date. AR 194. She completed high school through ninth grade, but she asserted a goal of obtaining her GED. AR 45, 292, 358. She is the primary caretaker for her daughter. AR 45-46. She previously worked as a babysitter and with a traveling carnival. AR 46, 292.

## V.    The ALJ's Findings

The ALJ determined that Ms. Sankwich was not under a disability within the meaning of the Act from March 1, 2010, through the date of the decision. AR 18-30.

**At step one**, the ALJ found that Ms. Sankwich had not engaged in substantial gainful activity since March 1, 2010, her alleged onset date (citing 20 C.F.R. §§ 404.102, 416.120(c), 404.350(a)). AR 20.

**At step two**, the ALJ found Ms. Sankwich had the following severe impairments: irritable bowel syndrome, degenerative disc disease, affective disorder, anxiety disorder, and somatoform disorder (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 20-21.

At **step three**, the ALJ found that Ms. Sankwich did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 21-22.

At **step four**, the ALJ found Ms. Sankwich had the following residual functional capacity. She can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: she can perform simple, routine tasks and follow short, simple instructions; she can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days; she can respond appropriately to

supervision and co-workers and deal with occasional changes in the work environment; and she is limited to jobs that require only occasional exposure to or interaction with the general public. AR 23.

The ALJ determined that Ms. Sankwich has no past relevant work experience. AR 28.

At **step five**, the ALJ also found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Sankwich can perform. AR 28-30. These include packing line worker; cleaner, housekeeping; and assembler, production. AR 29. The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

## VI.    Issues for Review

Ms. Sankwich argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly assessing the medical opinions; (2) finding her Crohn's disease was not a severe, medically-determinable impairment and that she did not meet Listing 5.06; and (3) discrediting Ms. Sankwich without specific, clear, and convincing reasons to do so. ECF No. 14 at 4-5.

//

//

# VII. Discussion

## A. The ALJ did not err in evaluation of the medical record

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

Here, Ms. Sankwich argues the ALJ erred in weighing the opinons of four physicians: Dr. Alysa A. Ruddell, Ph.D.; Dr. Mary Lemberg, M.D.; Dr. Lee Bourdeau, M.D.; and Dr. Gary Gaffield, D.O. ECF No. 14 at 5-14.

**a. Dr. Ruddell**

Dr. Ruddell performed a psychological evaluation of Ms. Sankwich on September 7, 2012. AR 292-95. Dr. Ruddell found Ms. Sankwich to have multiple limitations in basic work activity and marked limitations in the ability to understand, remember, and persist in detailed tasks, and to complete a workday or workweek without interruptions. AR 294.

The ALJ gave little weight to Dr. Ruddell's opinion. AR 28. Because she did not review medical records, the ALJ determined Dr. Ruddell's findings were based largely on self-reporting, which was not credible. *Id.*; *see also infra* at pp. 17-19. Additionally, the ALJ noted that Dr. Ruddell's findings were inconsistent with Ms. Sankwich's ability to work for years as a childcare provider. AR 28.

An ALJ may discredit a doctor's opinion that is largely based on self-reporting when the claimant has been found to be not credible. *Fair v. Bowen*, 885 F.2d 297, 605 (9th Cir. 1989). While Dr. Ruddell did perform a mental status examination that found Ms. Sankwich to be depressed and anxious, generally the examination did not demonstrate findings that would support such significant limitations. AR 295. Thus, it appears that Dr. Ruddell must have relied on more

than clinical observations to make her determination. The only other source of information was Ms. Sankwich's self-reporting, as Dr. Ruddell did not review Ms. Sankwich's medical records. This is further supported by the reasoning given for the GAF score, which included "occasional panic attacks" and having few friends and conflicts with peers or co-workers, information only obtainable through Ms. Sankwich's self-reporting. AR 293

Therefore, the ALJ's interpretation of Dr. Ruddell's opinion is rational. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

### b. Dr. Lemberg

Dr. Lemberg performed a comprehensive psychiatric evaluation of Ms. Sankwich on April 29, 2013. AR 313-19. The ALJ gave some weight to the opinion, including great weight to portions that were consistent with the mental status examination and that Ms. Sankwich would have some difficulty interacting with co-workers and the public. AR 27. The ALJ gave less weight to the portion

that found Ms. Sankwich would "greatly struggle with the usual stress and demands of full-time employment." *Id.*, AR 319. The ALJ gave less weight to this portion of the opinion because it was based heavily on Ms. Sankwich's self-reporting and was inconsistent with her activities of daily living. AR 27.

Dr. Lemberg made her opinion based on both Ms. Sankwich's mental and physical limitations. It is clear from Dr. Lemberg's report, however, that the information regarding Ms. Sankwich's physical condition is based on Ms. Sankwich's statements. AR 313-18. Dr. Lemberg's only review of the records was a psychological evaluation from September 2012, AR 313, which actually predates the diagnosis of possible Crohn's disease in November 2012, AR 305-06. Yet, Dr. Lemberg refers to Crohn's disease and the limitations associated with that condition in numerous places in her opinion. AR 313-16.

As noted before, an ALJ may discredit a doctor's opinion that is largely based on self-reporting when the claimant has been found to be not credible. *Fair*, 885 F.2d at 605. In addition to a lack of clinical findings regarding Ms. Sankwich's physical conditions, Dr. Lemberg's proposed limitations regarding her mental condition are inconsistent with the mental status examination, AR 316-17., as well as with Ms. Sankwich's activities of daily living, AR 317.

//

//

**c. Dr. Bourdeau**

Dr. Bourdeau[1] performed a physical functional evaluation of Ms. Sankwich on September 6, 2012. AR 297-99. The ALJ gave no weight to the opinion that Ms. Sankwich is limited to sedentary work because Dr. Bourdeau provided no support for his opinion. AR 28. This is supported by a review of the record.

First, the only diagnosis provided is persistent vomiting and abdominal pain, yet only at a severity level of 2, which is classified as mild and causing "no significant interference with the ability to perform one or more basic work-related activities." AR 298. Prior to the physical examination, Dr. Bourdeau did not review of any medical records, and his notes indicate that he relied on the reporting of Ms. Sankwich, which the ALJ found to be not credible. AR 302; *see infra* at pp. 17-19. His physical examination resulted in largely normal findings. AR 302. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The Court finds no error with the ALJ's treatment of Dr. Bourdeau's opinion.

**d. Dr. Gaffield**

Dr. Gaffield performed a physical consultative evaluation of Ms. Sankwich on June 21, 2013. AR 321-25. The ALJ gave great weight to this opinion because

---

[1] The ALJ mistakenly calls Dr. Bourdeau as "Dr. Bowdeau" in the order. For the purposes of this order, the Court will use the proper spelling of Dr. Bourdeau's name.

it was consistent with the record and the largely normal findings in his physical

evaluation. AR 27. Despite this, the ALJ gave some weight to Ms. Sankwich's

back pain complaints and provided a greater limitation than opined by Dr.

Gaffield; thus, the ALJ limited Ms. Sankwich to light exertional work in the

residual functional capacity. AR 27. Ms. Sankwich argues this was improper

because Dr. Gaffield noted her Crohn's disease was asymptomatic and led to the

improper finding that she was more capable than she is. ECF No. 14 at 14.

The Court does not decide if a doctor misdiagnosed a patient, as its duty is

limited to the review of the ALJ's treatment of the evidence. However, Dr.

Gaffield provided numerous examples of why he found her condition

asymptomatic, including a lack of loose stools or cramping, no mucous or

cramping with stools, and no blood in her stools. AR 321. The ALJ accepted this

opinion, as it is supported by the examination notes. The Court finds no error.

**B. The ALJ did not err by not finding Crohn's disease a medically**
**determinable impairment.**

At step two in the five-step sequential evaluation for Social Security cases,

the ALJ must determine whether a claimant has a medically severe impairment or

combination of impairments. An impairment is found to be not severe "when

medical evidence establishes only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on an individual's

ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Here, the ALJ found Ms. Sankwich to have irritable bowel disease as a severe impairment, but that the record did not contain an "actual diagnosis" of Crohn's disease. AR 20. This is an accurate interpretation of the record. Dr. Jonathan J. Hurst, M.D., saw Ms. Sankwich on December 20, 2012, for her "presumed" Crohn's disease, and he noted that upon reviewing the results of testing taken on November 9, 2012, Ms. Sankwich "most likely" has Crohn's disease. AR 307-08. Dr. Hurst specifically noted that he needed further testing to make a "statistical confirmation" of the diagnosis. AR 308. The diagnosis of Crohn's disease by Dr. Gary Gaffield, D.O., was based on Ms. Sankwich's reporting of her diagnosis, not on actual testing. AR 321, 325. In addition, Dr. Gaffield described Ms. Sankwich as "asymptomatic." AR 325. Notes from Memorial Physicians in February 2014 refer to a November 2012 diagnosis of Crohn's disease, AR 339-40, but the actual lab results from the colonoscopy

performed in November 2012 do not definitively diagnose Crohn's disease, AR 305-06.

At step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). Because Ms. Sankwich was found to have at least one severe impairment, this case was not resolved at step two. Thus, any error in the ALJ's finding at step two is harmless, if all impairments, severe and non-severe, were considered in the determination Ms. Sankwich's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). Here, the ALJ did make a finding that inflammatory bowel disease was a severe impairment—and analyzed it for severity under Listing 5.06. Moreover, the ALJ specifically noted that while the diagnosis of Crohn's disease is not in the record, the ALJ "considered all of [Ms. Sankwich's] symptoms regardless of the diagnosis in formulating the residual functional capacity." AR 21. While the Court accepts the ALJ's interpretation of the record regarding Crohn's disease, it also finds that any error would have been harmless.

//

**C. The ALJ did not err in the determination of Ms. Sankwich's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ determined that Ms. Sankwich's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Ms. Sankwich's statements concerning the intensity, persistence, and limiting effects

are not entirely credible. AR 24. The ALJ primarily relied on Ms. Sankwich's activities of daily living and the lack of evidence in the medical record to support a finding of disability. *Id.*

Of most note to the ALJ was Ms. Sankwich's ability to be the primary care provider for her infant daughter. AR 24. Ms. Sankwich's testimony, however, indicates that while she is supporting her child on state assistance, AR 45-46, she also is living with the child's paternal grandmother, who is helping her raise the baby, AR 52. The record establishes that Ms. Sankwich receives more assistance with her child than the ALJ credits. Moreover, merely caring for a child does not automatically equate the ability to do more than reported limitations. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017).

The ALJ's reliance on Ms. Sankwich's childcare as a factor is harmless, however, because the ALJ also cites to numerous activities that Ms. Sankwich does, which undermines her claims of disabling mental and physical impairments. These include personal care, meal preparation, household chores, visiting the library, using a computer, walking, hiking, camping, spending time with friends, and attending church. AR 24, 293, 322. She told Dr. Gaffield in July 2013 that she can walk a mile, would not hesitate to go hiking or camping, and she does not avoid stairs. AR 321.

Additionally, the objective evidence does not support Ms. Sankwich's subjective symptom testimony. In the visit with Dr. Gaffield in July 2013, she denied depression, anxiety, panic, or confusion. AR 322. The record regarding her bowel issues shows improvement, even at times described as "asymptomatic." AR 307, 321, 324, 340. Physical examinations related to her back impairment were generally unremarkable. While she had some "slight scoliosis" in July 2013, the remainder of the findings showed no major concerns. AR 323-24.

In addition, Ms. Sankwich often did not follow up or seek treatment, especially with regard to her mental health impairments. AR 310, 314, 321, 325, 355. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Overall, the record supports the ALJ's findings that Ms. Sankwich's subjective symptom testimony was not credible.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

   **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

   **DATED** this 4th day of April, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
